The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Phillip A. Holmes, the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award. Accordingly, the Full Commission affirms and adopts the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing and in a Pre-Trial Agreement as:
 STIPULATIONS
1. At all relevant times herein the employer-employee relationship existed between the plaintiff and defendant-employer.
2. Travelers Insurance Company is the carrier on the risk.
3. Plaintiffs average weekly wage is $627.33 which yields a compensation rate of $418.24.
4. All parties have been correctly designated and there is no question as to misjoinder or non joinder of parties.
5. For the purposes of this matter, the parties stipulate that following the date of the alleged injury and subsequent surgery, plaintiff left work with defendant-employer on or about July 12, 1997, and returned to work with defendant-employer on or about February 18, 1998.
6. Plaintiff is a citizen and resident of North Carolina and defendant-employer is a corporation organized and existing under the laws of the State of Missouri. Defendant-employer performs jobs in many different states and plaintiff, during the time he has been employed with defendant-employer, has worked on jobs in numerous states.
7. Plaintiffs medical records regarding this claim were admitted into evidence as Stipulated Exhibit #1 and include the following:
a) Raleigh Urgent Care Center
b) Pitt Orthopedic Service
c) Pitt Memorial Hospital
 d) Pamlico Orthopedic Associates (including records from Beaufort County Hospital)
8. Stipulated Exhibit #2 is a letter from Gerald Chimney Company and Mr. G. T. Pawlowicz and is admitted into evidence.
9. Stipulated Exhibit #3 is a package of letters and is admitted into evidence.
10. Stipulated Exhibit #4 is a copy of plaintiffs payroll records and is admitted into evidence.
 ***********
Based upon all of the competent evidence of record, the Full Commission adopts the findings of fact of the Deputy Commissioner as follows:
 FINDINGS OF FACT
1. At the time of the hearing of this matter, plaintiff was 39 years old and employed by the defendant-employer as a steeple jack. Plaintiff had been employed by defendant-employer for some 17 years in this capacity. Plaintiff was hired by defendant-employer in North Carolina, although defendant-employers home office is in Missouri. Plaintiff was working in Raleigh, North Carolina at the time when he began having symptoms of the disease which is the basis of this claim.
2. In 1992 plaintiff began experiencing pain in his right wrist and elbow while working for defendant-employer. He made a claim for workers compensation benefits and two hearings were held in 1993 to determine if plaintiffs claim was compensable. Deputy Commissioner Roger Dillard of the North Carolina Industrial Commission issued an Opinion and Award on February 16, 1994, denying plaintiffs claim and concluded that plaintiff had not contracted an occupational disease.
3. Plaintiff continued working for defendant-employer after his claim was denied by the Industrial Commission in the same capacity as a steeple jack. The job of steeple jack includes doing inspection, repair and demolition of smokestacks. The job required plaintiff to install rigging equipment such as steel ladders, cables, metal brackets, scaffold planks and hoisting and rigging equipment on chimneys or smokestacks and then working off of a "bosuns chair or motorized scaffolding to perform visual inspections of the insides or outsides of steel smokestacks or masonry chimneys. It also included repair work on smokestacks including tuck pointing, brick resetting and some concrete pouring.
4. In addition to the above tasks, about one-third of plaintiffs job consisted of demolition of smokestacks. This job required the same type of rigging as described above, and also involved the use of jackhammers and hand tools to dismantle or wreck brick chimneys. In performing the demolition part of the job, plaintiff and his co-employees would set up a scaffold and begin using jackhammers to tear down approximately five feet of chimney at a time. Thereafter, the scaffolding would be lowered and another five-foot section of chimney would be removed using jackhammers. Such a demolition job could involve the use of a jackhammer 8 to 10 hours a day until the chimney was demolished and the job complete. Not all of the jobs performed by defendant-employer and its employees involved demolition.
5. However, on April 14, 1997, plaintiff began working on a demolition job for defendant-employer in Lakeland, Florida which lasted several weeks. That job was followed by two other demolition jobs in Raleigh, North Carolina which lasted until May 28, 1997. All of these jobs required plaintiff to use an air powered jackhammer for hours at a time each day.
6. On May 29, 1997, plaintiff was seen at the Raleigh Urgent Care Center in Raleigh, North Carolina with complaints of pain in the right wrist of about one weeks duration. Plaintiff noted at the time that he had been using a jackhammer daily for two months working in demolition. The doctor at Raleigh Urgent Care Center took plaintiff out of work until June 2, 1997, and advised follow-up with another provider. The notes from Raleigh Urgent Care Center indicate that the diagnosis at that time was questionable carpal tunnel syndrome.
7. On June 9, 1997, plaintiff was seen in the Emergency Department of Pitt County Memorial Hospital in Greenville, North Carolina. Again his chief complaint was right wrist pain. He was wearing a splint on his wrist at the time he was seen in the hospital. The doctors at Pitt County Memorial Hospital diagnosed a median nerve entrapment after noting positive Tinels and Phalens tests. They treated plaintiff by advising him to continue wearing his splint, to elevate his right upper extremity, prescribed Relefen for pain and told him to remain out of work until June 17, 1997. They also advised him not to do any lifting with his right arm for ten days.
8. Plaintiff returned to work for defendant-employer on June 22, 1997, and worked until July 12, 1997, when he left defendant-employers job in St. Louis, Missouri. He was seen by Dr. Barsanti at Pitt Orthopedic Service in Greenville, North Carolina on July 17, 1997. Dr. Barsanti felt he may have carpal tunnel syndrome and ordered EMG and nerve conduction tests. He gave plaintiff a note to remain out of work until plaintiff could follow-up with Dr. Barsanti after these tests were performed, which occurred on September 9, 1997. The tests proved to be negative. Dr. Barsanti, because plaintiff was still complaining of significant pain, eventually referred plaintiff to Dr. Edward Birdsong, orthopedic surgeon, in Washington, North Carolina.
9. Dr. Birdsong initially saw plaintiff on November 6, 1997, and diagnosed him with carpal tunnel syndrome. He ultimately performed surgery on plaintiff to relieve the symptoms of the carpal tunnel syndrome and the surgery confirmed his diagnosis. Plaintiff did well following the surgery by Dr. Birdsong in that there was a marked decrease in the symptoms of carpal tunnel syndrome. Plaintiff requested and was given a note by Dr. Birdsongs office allowing him to return to work on February 9, 1998. Plaintiff returned to work for defendant-employer on or about February 18, 1998.
10. The right wrist pain for which plaintiff sought treatment beginning in May 1997 was similar in nature to that he had suffered before in the early 1990s only more severe. Prior to May 1997 plaintiffs symptoms had waxed and waned. However, in May 1997 the pain began to interfere with plaintiffs ability to work. Prior to May 29, 1997, plaintiff had not received any treatment for symptoms of carpal tunnel syndrome for several years.
11. Prior to 1997 plaintiff suffered from a non-work-related disease, to wit, carpal tunnel syndrome, which was not disabling. The symptoms waxed and waned and did not require medical attention.
12. The several demolition jobs in a row on which plaintiff worked for defendant-employer beginning April 14, 1997, which required the repeated use of a jackhammer for several hours each day and continued for a period of several weeks, caused a material aggravation of plaintiffs pre-existing carpal tunnel syndrome to the point that it became disabling and required medical treatment and surgery.
13. As a result of the pain in his right wrist caused by the aggravation of his pre-existing, non-disabling carpal tunnel syndrome, plaintiff was unable to work and earn wages from May 29 until June 19, 1997, and again from July 17, 1997, until February 18, 1998.
14. The treatment rendered by Raleigh Urgent Care Center, Pitt County Memorial Hospital, Dr. Barsanti and Dr. Birdsong, including all the tests, surgeries and related treatments were necessary to cure plaintiffs aggravated carpal tunnel symptoms and lessen his disability from work.
15. The use of a jackhammer on several consecutive demolition jobs by plaintiff over a period of several weeks for several hours per day is not an activity to which the general public is usually exposed and is characteristic of and peculiar to plaintiffs job as a steeple jack for defendant-employer.
16. Plaintiffs job as a steeple jack, particularly when doing demolition work in the weeks prior to May 29, 1997, placed him at a greater risk of aggravating his pre-existing carpal tunnel syndrome than members of the general public.
17. There is no credible evidence that the plaintiff has experienced any permanent partial disability to his right wrist or elbow.
 ***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable aggravation of a pre-existing, non-work-related, non-disabling carpal tunnel syndrome due to activities in his job that are characteristic of and peculiar to his employment for defendant-employer. N.C. Gen. Stat. 97-53(13).
2. Plaintiffs aggravation of his pre-existing carpal tunnel syndrome was causally related to his activities at his job, which placed him at a greater risk of aggravating his pre-existing condition than members of the general public. N.C. Gen. Stat.97-53(13).
3. As a result of the compensable aggravation of plaintiffs pre-existing condition, plaintiff was disabled from May 29, 1997 until June 19, 1997, and from July 12, 1997 until February 18, 1998, and is entitled to compensation for temporary total disability for those periods of time at the rate of $418.24 per week. N.C. Gen. Stat. 97-29.
4. Plaintiff is entitled to have defendants provide all medical treatment arising from plaintiffs compensable aggravation of his pre-existing condition to the extent it tends to effect a cure, give relief or lessen plaintiffs disability. N.C. Gen. Stat.97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay to plaintiff temporary total disability for the following periods of time: May 29, 1997 through June 19, 1997, and July 12, 1997 through February 18, 1998, at a rate of $418.24 per week. As the amounts payable under this award have accrued, these shall be payable to plaintiff in a lump sum; subject to reasonable attorneys fees approved herein.
2. A reasonable attorney fee in the amount of twenty-five percent (25%) of the lump sum awarded to plaintiff is due plaintiffs counsel and shall be deducted from the lump sum payable to plaintiff and paid directly to plaintiffs counsel.
3. Defendants shall pay all medical expenses incurred by plaintiff as a result of his compensable aggravation of a pre-existing condition for so long as such treatments tend to effect a cure, give relief or lessen plaintiffs disability.
4. Defendants shall pay the costs.
This 10th day of May 2000.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/_______________ CHRISTOPHER SCOTT COMMISSIONER
S/_______________ DIANNE C. SELLERS COMMISSIONER